UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TYRONE C.,

        Plaintiff,

  -v-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

20-CV-0790-MJR
DECISION AND ORDER



      Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 15)

      Plaintiff Tyrone C.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, plaintiff's motion (Dkt. No. 12) is denied and defendant's motion (Dkt. No. 13) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

**BACKGROUND**[2]

On May 2, 2017, plaintiff applied for SSI benefits, alleging disability beginning on April 14, 1969.  Plaintiff's claim was denied at the initial level, and again after a hearing before an Administrative Law Judge ("ALJ").  (Tr. 7-26, 33-64, 111-22, 123-25)[3]  The Appeals Council denied plaintiff's request for review of the ALJ's decision on May 5, 2020, thereby making it the final decision of the Commissioner.  (Tr. 1-6)   This timely action followed.  (Dkt. No. 1)

**DISCUSSION**

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record,

---

[2] The Court presumes the parties' familiarity with the case.

[3] Citations to "Tr__" refer to the pages of the administrative transcript.  (Dkt. No. 10)

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the

4

claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the application date of May 2, 2017. (Tr. 12) At step two, the ALJ found that plaintiff had the severe impairments of lumbar degenerative disc disease; depressive disorder; and post-traumatic stress disorder ("PTSD"). (Tr. 12-13)   At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the Listings. (Tr. 13-14) Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform

> medium work as defined in 20 CFR 416.967(c), and SSR 83-10, except the claimant is limited to unskilled work involving no fast-paced tasks. He can interact occasionally with coworkers and members of the general public, but he should generally work alone on tasks with minimal social demands. Finally, the claimant must work in a generally static environment, but can tolerate occasional changes in work setting or assignment.

(Tr. 14-20)   The ALJ then found at step four that plaintiff could not perform his past relevant work as a landscape laborer. (Tr. 20) At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in the national economy which plaintiff could perform. (Tr. 21-22) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 22)

IV.   *Plaintiff's Challenge*

Plaintiff seeks remand of the Commissioner's decision on the basis that the ALJ erred in relying upon the opinion of the consultative examiner in determining the mental RFC. (Dkt. No. 12-1 at 10-18)

6

With respect to plaintiff's mental RFC, the ALJ evaluated the opinions of treating physician Joshua Morra, M.D., consulting examiner Dr. Susan Santarpia, Ph.D., and State agency psychiatric consultant H. Tzetzo, M.D. (Tr. 19-20)

On July 13, 2017, plaintiff saw psychologist Dr. Santarpia for a consultative examination. (Tr. 517) Plaintiff reported that he lived with a friend, treated with a counselor, and received psychotropic medication. (Tr. 517) On examination, plaintiff was cooperative and related adequately; he had clear speech, coherent and goal-directed thoughts, a full affect, full orientation, intact attention/concentration, intact memory, average-to-low average cognitive functioning, and fair insight/judgment. (Tr. 518-519) Plaintiff cared for his personal needs, performed light cooking, cleaned, did laundry, managed his finances, watched television, and shopped. He said he had limited socialization. (Tr. 519) Dr. Santarpia opined that plaintiff could understand, remember, and apply simple, as well as complex directions and instructions; use reason and judgment to make work-related decisions; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions within normal limits. (Tr. 520) The doctor also opined that plaintiff had a mild-to-moderate limitation in regulating emotions, controlling behavior, and maintaining well-being, and that plaintiff's difficulties were caused by "lack of motivation." (Tr. 520) She assessed plaintiff with major depressive disorder, recurrent, moderate, with psychotic features, and PTSD. (Tr. 520)

The ALJ afforded Dr. Santarpia's opinion "great weight," explaining that the opinion was consistent with her generally benign findings and was not consistent with plaintiff's

self-report.  (Tr. 20)  The ALJ noted several discrepancies between plaintiff's report in connection with his application for benefits and his report to Dr. Santarpia.  Because Dr. Santarpia had the opportunity to ask follow-up questions directly and to clarify plaintiff's statements, the ALJ found plaintiff's report to Dr. Santarpia a more reliable indicator of his functioning.  (Tr. 20)

On August 8, 2017, State agency medical consultant Dr. H. Tzetzo reviewed the evidence of record and opined that plaintiff had no limitations in understanding, remembering, or applying information, mild limitations in interacting with others, and moderate limitations in concentrating, persisting, or maintaining pace, and adapting or managing oneself.  (Tr. 100-01)  Dr. Tzetzo opined that plaintiff could handle simple, routine, and repetitive work tasks; his ability to understand and remember short and simple instructions was not significantly limited; his ability to understand and remember detailed instructions was moderately limited; and his ability to maintain attention and concentration for extended periods was not significantly limited.  (Tr. 101-104) Dr. Tzetzo further opined that plaintiff's ability to sustain an ordinary routine without special supervision was moderately limited and his ability to work in coordination with or in proximity to others without being distracted was not significantly limited; his ability to accept instructions and respond appropriately to criticism from supervisors was moderately limited; and his ability to interact with the general public and get along with coworkers was not significantly limited.  (Tr. 105)

The ALJ afforded this opinion "partial weight," noting that Dr. Tzetzo did not explain his opinion or cite to adverse findings in the record, and appeared to rely on plaintiff's

remote history of past alcohol dependence and consultative examination from 2010. (Tr. 20)

On January 23, 2019, Dr. Morra completed a medical source statement. (Tr. 623-28)  Dr. Morra indicated that he was unable to determine any mental abilities and aptitudes needed to do unskilled work. (Tr. 625)  Dr. Morra opined that plaintiff had a limited but satisfactory ability to understand and remember detailed instructions and set realistic goals or make plans independently of others. (Tr. 626)  The doctor further opined that plaintiff was seriously limited in carrying out detailed instructions and dealing with the stress of semiskilled and skilled work; he was seriously limited in interacting appropriately with the general public, maintaining socially appropriate behavior, traveling in unfamiliar places, and using public transportation; and had a limited but satisfactory ability to adhere to basic standards of neatness and cleanliness. (Tr. 626)  Plaintiff did not have reduced intellectual functioning. (Tr. 626)  Dr. Morra estimated that plaintiff would be absent more than four days per month. (Tr. 627)  Due to plaintiff's paranoid thought process, he was non-compliant with medication. (Tr. 627)  He opined that plaintiff could not engage in full-time competitive employment. (Tr. 628)

The ALJ gave no weight to Dr. Morra's "speculative" opinion that plaintiff was likely to be absent from work more than four days per month, which was not evident from any finding or implied in the medical history. (Tr. 19)  The ALJ further noted that Dr. Morra did not explain his finding that plaintiff could not engage in full-time competitive employment, and that while Dr. Morra had a treating relationship with plaintiff, he examined plaintiff on a single occasion and began treatment the same month the opinion was rendered.  Accordingly, the ALJ gave overall "partial and guarded" weight to Dr.

Morra's opinion, explaining that the opinion was minimally persuasive, but nonetheless largely compatible with the restrictions assessed in the RFC. (Tr. 19)

Plaintiff now contends, in several related arguments, that the ALJ erred in affording to great weight to the opinion of Dr. Santarpia. (Dkt. No. 12-1 at 10)  The Court addresses these arguments in turn below.

First, plaintiff argues that the ALJ erred in affording great weight to Dr. Santarpia's opinion because the consultant did not have plaintiff's medical records to substantiate her findings. (Dkt. No. 12-1 13-14; Tr. 520)  The Court cannot find this to be *per se* error, as there is no clear regulatory requirement that a consultative examiner must be provided a plaintiff's medical records. *See* 20 C.F.R. § 416.919n(c)(1)-(7) (listing the elements of a complete consultative examination); *see also Johnson v. Colvin*, No. 13-CV-3945, 2015 WL 6738900, at *14-15 (E.D.N.Y. Nov. 4, 2015) ("The regulations provide that a comprehensive consultative report should include the plaintiff's primary complaints, a description of the history of those complaints, examination findings, the results of laboratory or other tests, a diagnosis and prognosis, and a statement about the individual's abilities despite his impairments."); *Genito v. Commissioner Of Social Security*, No. 16-CV-0143, 2017 WL 1318002, at *9 (N.D.N.Y. Apr. 7, 2017) ("there is no legal requirement that opinion sources must have access to a full and complete record in order for their opinions to be sufficient to constitute substantial evidence").  While the Commissioner must "give the examiner any necessary background information about [claimant's] condition," *see* 20 C.F.R. § 404.1517, this regulation "does not mandate that the examiner must be provided with plaintiff's medical records." *Genovese v. Astrue*, No. 11-CV-02054, 2012 WL 4960355, at *18 (E.D.N.Y. Oct. 17, 2012) (internal quotation

marks omitted); *see also Mayor v. Colvin*, 2015 WL 9166119, at *18, n. 24 (S.D.N.Y. Dec. 17, 2016).  Here, Dr. Santarpia's report establishes that all of the regulatory elements of a complete consultative examination were met. Specifically, Dr. Santarpia obtained significant background information and provided a detailed description of plaintiff's background, longitudinal history (including his psychiatric history, treatment, medical and surgical history), his reported level of functioning at the time of the examination, and drug and alcohol history.  (Tr. 517-20)

Plaintiff also argues, in passing, that Dr. Santarpia's 2017 opinion was stale because the mental treatment notes of record post-dated her opinion. (Dkt. No. 12-1 at 11-12)  Dr. Santarpia's opinion was not stale simply due to the passage of time.  *See Kidd v. Comm'r of Soc. Sec.*, No. 18 CV 217, 2019 WL 1260750, at *3, 4 (W.D.N.Y. Mar. 19, 2019) (consultative examiner's opinion was not stale merely because it was rendered almost two years prior to the administrative hearing). Nor was it stale because the treatment notes that post-dated Dr. Santarpia's opinion similarly showed that although plaintiff complained of depression, he was cooperative and had logical and goal-directed thoughts, normal perception, full orientation, intact memory, fair insight and judgment, and good concentration. (Tr. 562, 590-91, 612)  Further, although plaintiff alleged that he heard voices and saw shadows (Tr. 613), Dr. Morra reported that plaintiff had no audiovisual hallucinations and did not appear to be responding to internal stimuli. (Tr. 612)  Accordingly, the Court rejects plaintiff's contention.  *See Andrews v. Berryhill*, No. 17-CV-6368, 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (ALJ did not err in relying on dated opinions where there was no indication the plaintiff's "condition had significantly deteriorated after the issuance of...[the] opinions such that they were rendered stale or

incomplete"). Likewise, plaintiff's contention that treatment notes prior to Dr. Santarpia's opinion were inconsistent with her findings (Dkt. No. 12-1 at 13), must also fail. Records from Horizon Health Services, pre-dating Dr. Santarpia's examination, reveal that plaintiff was cooperative and had logical and goal-directed thoughts, no delusions, normal perception, full orientation, intact memory, and good concentration. (Tr. 317, 332, 337, 340, 345, 348, 351, 357, 367, 373, 375, 381, 383, 394, 408, 414, 420-21, 426-27, 433-34, 439, 445, 451, 458, 465-66, 471, 476-77, 482, 488, 495, 502-03)

Plaintiff also challenges the weight assigned to Dr. Santarpia's opinion because it was based upon a one-day examination. (Dkt. No.12-1 at 11) It is well-established that a consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record. *Grega v. Saul*, 816 Fed. Appx. 580, 582-83 (2d. Cir. 2020) (summary order). Here, Dr. Santarpia's opinion was consistent with the aforementioned examination findings showing that plaintiff was cooperative and had logical thoughts, intact memory, no delusions, and good concentration. (Tr. 317, 332, 337, 340, 345, 348, 351, 357, 367, 373, 375, 381, 383, 394, 408, 414, 420-21, 426-27, 433-34, 439, 445, 451, 458, 465-66, 471, 476-77, 482, 488, 495, 502-03, 562, 590-91, 612) The Court therefore rejects this challenge.

Next, plaintiff avers that the ALJ erred in formulating an RFC that did not include a limitation on the ability to interact with supervisors despite Dr. Santarpia's assessment of "mild impairment" in this area. (Dkt. No. 12-1 at 16-17; Tr. 520) It is well-settled that an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision,

he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.). Moreover, any error in this regard would be harmless because Dr. Santarpia only assessed a "mild impairment" with respect to plaintiff's interaction with supervisors, and Dr. Morra did not provide an opinion on plaintiff's ability to interact with supervisors. *See Martinez Reyes v. Comm'r of Soc. Sec.*, No. 18-CV-0394, 2019 WL 3369255, *7 (W.D.N.Y. 2019) (failure to account for limitations in interacting with supervisors harmless where there was "not substantial evidence in the record to support a finding that plaintiff was substantially limited in interacting with supervisors"). Plaintiff's tandem argument that the ALJ should have included a hypothetical pertaining to interaction with supervisors (Dkt. No. 12-1 at 17), is likewise unpersuasive. It was not necessary for the ALJ to include limitations in a hypothetical to the vocational that contained limitations that the ALJ reasonably found were not credibly established by the record. *See McIntyre v. Colvin*, 158 F.3d 146, 151 (2d Cir. 2014) (ALJ may rely on vocational expert testimony regarding a hypothetical so long as there is substantial evidence to support the assumptions therein and they accurately reflect the claimant's limitations and capabilities) (internal citations omitted); *Wavercak v. Astrue*, 420 Fed. Appx. 91, 95 (2d Cir. 2011) ("[b]ecause we have already concluded that substantial record evidence supports the RFC finding, we necessarily reject [plaintiff's] vocational expert challenge").

Finally, plaintiff suggests that the ALJ, in noting plaintiff's lack of treatment, erroneously discounted his symptoms without first considering potential explanations for non-compliance. (Dkt. No. 12-1 at 15) The ALJ's decision, however, read in context does not appear to "fault" plaintiff for his non-compliance, but rather observes an "uneven

record of treatment . . . . He had not gone for treatment in two years, *severely limiting available objective evidence.* In office visit notes we have, there is documented non-compliance with medications and therapy." (Tr. 18, emphasis added). Thus, while the ALJ may have partially relied on this evidence to find plaintiff's symptoms not as severe as alleged, he also acknowledged the lack of objective evidence to support a disabling mental impairment.

Notably, the ALJ inquired of plaintiff as to the reasons for his lack of treatment at the administrative hearing. Plaintiff testified that he did not attend appointments because he had difficulty remembering things. (Tr. 45) Yet on examination, plaintiff's memory was routinely intact. (Tr. 317, 332, 337, 340, 345, 348, 351, 357, 367, 373, 375, 381, 383, 394, 408, 414, 420-21, 426-27, 433-34, 439, 445, 451, 458, 465-66, 471, 476-77, 482, 488, 495, 502-03, 562, 590-91, 612) Thus, there is no evidence of regular deficits in judgment and cognition, such to conclude that the failure to pursue treatment is attributable to plaintiff's mental impairments. *See Landers v. Colvin*, No. 14-CV-1090, 2016 WL 1211283, at *6 (W.D.N.Y. Mar. 29, 2016) (medical records indicated that plaintiff generally possessed normal cognitive function and judgement, and plaintiff proffered no viable reason why he did not seek out treatment); *Frawley v. Colvin*, No. 13-CV-1567, 2014 WL 6810661, at *11 (N.D.N.Y. Dec. 2, 2014) (same). The Court does not find remand warranted on this basis.

All of the foregoing evidence supports the ALJ's consideration of Dr. Santarpia's opinion, along with the ALJ's RFC finding generally. While plaintiff may disagree with the ALJ's treatment of the record evidence, the question is not whether plaintiff can offer a plausible alternative evaluation of the record, but whether substantial evidence supports

the ALJ's overall decision. *See Cohen v. Comm'r of Soc. Sec.,* 643 Fed. Appx. 51, 52 (2d Cir. 2016) (stating that the court may not substitute its own judgment for that of the Commissioner, even if it "might justifiably have reached a different result upon a *de novo* review") (quotation omitted).  This Court declines any invitation to reweigh the evidence presented to the ALJ.  *See Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015).

The Court finds that the ALJ's decision is free of legal error and supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      September 21, 2021
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge